**Thomas Richard SNEED, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 05–81–00718.**

Court of Appeals of Texas,
Dallas.

June 28, 1982.

Melvyn C. Bruder, Dallas, for appellant.

Henry M. Wade, Dist. Atty., W. T. Westermoreland, Jr., Asst. Dist. Atty., Dallas, for appellee.

Before STOREY, STEPHENS and FISH, JJ.

FISH, Justice.

Appellant was convicted by a jury of murder and sentenced to confinement for 75 years. On this appeal, he advances two contentions: first, that he was deprived of his rights under the Fifth and Sixth Amendments to the United States Constitution when two psychiatrists who had examined him testified for the State, and second, that his rights were violated at the punishment stage when he was asked to read from a document, never admitted into evidence, concerning a prior conviction he denied. We find no merit in either contention; consequently, we affirm.

## FIRST GROUND: PSYCHIATRIC TESTIMONY

On separate occasions before trial, appellant was examined by two different psychiatrists. Both testified as witnesses for the State during the guilt and penalty stages of the trial. They stated, without objection, that appellant admitted committing the murder deliberately, and not as a result of any outside influence, that he showed no remorse or regret, and that he was a dangerous and violent person.

Appellant argues that use of this psychiatric testimony violated his Fifth Amendment privilege against compulsory self-incrimination and his Sixth Amendment right to counsel, citing *Estelle v. Smith*, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981). After consideration of that decision, we have concluded that the rule it announces is inapplicable to facts of this case.

*Estelle v. Smith* was a habeas corpus review in federal court of a state court conviction for capital murder. On its own motion, the state court had ordered a psychiatric examination before trial to determine Smith's competency, even though defense counsel had not put into issue either Smith's competency to stand trial or his

sanity at the time of the offense. Defense counsel did not learn of the examination until they discovered, some time after jury selection had begun, a letter from the psychiatrist in the court's file advising the court that Smith was competent to stand trial.

The Supreme Court held, on these facts, that Smith's privilege against compulsory self-incrimination, secured by the Fifth Amendment, and his right to counsel, protected by the Sixth Amendment, had been violated. The Court was careful to point out, however, that the psychiatric interview before it in that case was not at all analogous to a sanity examination resulting from a defendant's plea of insanity:

> "Nor was the interview analogous to a sanity examination occasioned by a defendant's plea of not guilty by reason of insanity at the time of his offense. When a defendant asserts the insanity defense and introduces supporting psychiatric testimony, his silence may deprive the State of the only effective means it has of controverting his proof on an issue that he interjected into the case. Accordingly, several courts of appeal have held that, under such circumstances, a defendant can be required to submit to a sanity examination conducted by the prosecution's psychiatrist." ·

101 S.Ct. at 1874. The Court also indicated that different considerations would apply if the accused himself initiated the psychiatric inquiry.

"Respondent, however, introduced no psychiatric evidence, nor had he indicated that he might do so.

\*    \*    \*    \*    \*    \*

> "A criminal defendant, who neither initiates a psychiatric evaluation nor attempts to introduce any psychiatric evidence, may not be compelled to respond to a psychiatrist if his statements can be used against him at a capital sentencing proceeding."

101 S.Ct. at 1874, 1876.

The Court also determined that Smith's Sixth Amendment right to counsel was violated because

> "[d]efense counsel ... were not notified in advance that the psychiatric examination would encompass the issue of their client's future dangerousness, and respondent was denied the assistance of his attorneys in making the significant decision of whether to submit to the examination and to what end the psychiatrist's findings could be employed."

101 S.Ct. 1877.

In the present case, appellant's counsel filed a motion seeking appointment of a psychiatrist to examine appellant at public expense.[1] It concluded with a prayer that "the findings and psychiatric reports of the attending diagnostician be made available to the Court, the State's attorney and the Defendant's counsel."

The court granted the motion for psychiatric examination the day it was filed.[2] Two days later, appellant signed a document entitled "Waiver of Privilege of Con-

---

1. The motion recited that:

    II.

    Defendant's attorney believes that the Defendand [sic] is afflicted with some sort of mental disorder that may well have destroyed the Defendant's ability to perceive the wrongfulness of his conduct or his capacity to conform his conduct to the requirements of the law he allegedly violated and that the Defendant is presently in such a state as to render his being unable to adequately assist his court appointed attorney in the preparation of an effective defense to the charge against him.

    III.

    The Defendant's attorney is not qualified to estimate with any exactitude the extent of mental disorder afflicting the Defendant without the specialized assistance of a qualified psychiatrist and, hence, the said attorney has been heretofore unable to adequately investigate the facts of the case or arrive at any meaningful judgment as to the *sanity* of the Defendant under the law [emphasis added].

2. The record reflects that the question of appellant's sanity or competency was apparently raised for the first time in the affidavit of Ruby Epps filed three days before the motion for appointment of a psychiatrist. In that affidavit, Ms. Epps stated that appellant was her son

fidentiality," in which he waived any privilege of confidentiality that might attach to the examination.[3] That same day, appellant was examined by Dr. Clay Griffith, the court-appointed psychiatrist. Dr. Griffith filed a written report with the court a week later. On the same day Dr. Griffith's report was filed, appellant filed an instrument signed by him and his counsel entitled "Motion for Notice to State of Defense of Insanity." Two days later, appellant was examined by Dr. James Grigson, a psychiatrist employed by the State with the agreement of defense counsel.

From a comparison of the fact situation in the instant case with that in *Estelle v. Smith, supra,* it is clear that most of the considerations underlying the Court's analysis in that case are not present here. Here, appellant had the benefit of counsel in seeking appointment of a psychiatrist and in raising the issue of insanity. He requested that the psychiatrist's report be made available to all parties and waived any privilege available to him for statements made to him by the psychiatrist. In taking those steps, appellant initiated the psychiatric inquiry himself. The opinion in *Estelle v. Smith* observed that, where the defense of insanity is thus raised by the accused, several courts of appeals have approved procedures requiring him to submit to a sanity examination by the prosecution's psychiatrist, such as Dr. Grigson conducted here. 101 S.Ct. at 1874.

We decline to extend the rule of *Estelle v. Smith* to the different factual situation presented here, where appellant initiated the psychiatric inquiry with the full knowledge of his attorney. Appellant's first ground of error is overruled.

## SECOND GROUND: READING FROM DOCUMENT NOT IN EVIDENCE

Appellant also complains that his rights were violated when the State improperly used a prior conviction at the punishment stage of trial. On cross-examination, the prosecutor asked appellant if he had been convicted "in Cause 78–288–E, on the 20th day of March 1978, in County Criminal Court No. 4 of the offense of unlawfully carrying a weapon." Appellant answered that he had not. The State then showed appellant a document, marked for identification purposes as State's Exhibit No. 28, and asked him if it contained his picture, and stated his full name, the date 3–20–78, carrying prohibited weapon and convicted. To each of these inquiries, appellant responded affirmatively. The document was never admitted into evidence.

■ Appellant asserts that this form of impeachment was improper because it allowed the introduction of hearsay evidence. At trial, no objection was made to this line of questioning. The failure to object waived any error. *Shumake v. State,* 502 S.W.2d 758, 761 (Tex.Cr.App.1973); *Perez v. State,* 491 S.W.2d 878, 878 (Tex.Cr.App. 1973).

■ In addition, as a general rule, a judgment will not be reversed for erroneous admission of improper testimony if the same facts were proved by other proper testimony. *Torres v. State,* 552 S.W.2d 821, 824 (Tex.Cr.App.1977). Here, appellant admitted, on redirect examination, that he had been convicted in 1978 for "carrying a concealed weapon." Appellant's second ground of error is overruled.

Affirmed.

and that she believed him "to be of unsound mind."

3. The full text of the instrument reads as follows:

I, *Thomas Richard Sneed,* the defendant in the above styled and numbered cause, having been ordered by the court to submit to a mental examination under Article 46.02, Texas Code of Criminal Procedure, hereby waive any and all rights I may have to the privilege

of confidentiality of any information pursuant to Article 5561h, Vernon's Texas Civil Statutes, including records of my identity, diagnosis, evaluation or treatment, with regard to this examination of me by *Dr. E. Clay Griffith,* as ordered by the court. I have been informed, prior to the examination, that any communications by me to *Dr. E. Clay Griffith* during said examination will be privileged.